Culp v. Madigan. Mr. Segal. Good morning, Your Honors, and may it please the Court. The District Court erred in denying plaintiffs the preliminary injunction they sought, because the statute that denies the plaintiffs the ability to apply for a concealed carry license is flatly unconstitutional. While that Court correctly found that plaintiffs had a likelihood of success on the merits, were suffering irreparable harm, and had no legal remedy for their inability to file an application for a concealed carry license under Section 66-40B of the Firearm Concealed Carry Act, as implemented by the government in its definition of substantially similar in Section 66-40B, the District Court incorrectly held the balance of harms and public interest favored the State, and did so using the incorrect level of scrutiny in analyzing plaintiffs' claim. More specifically, the Court interpreted the statute as a regulation of who may carry in Illinois, and that it was only a burden to a small number of people at one time, rather than working as a prohibition against the law-abiding qualified people of 45 states from submitting an application. That is a much more severe burden than the District Court interpreted, and strict or near-strict scrutiny should have been employed. Your problem is that we're not even able to apply, is that right? That is exactly correct, Your Honor. Plaintiffs are law-abiding citizens. There is an Air Force colonel, a nurse, a firearms trainer, and a firearms manufacturer among the group which hails from six states. Three of the plaintiffs are certified Illinois concealed carry instructors. They have the right to exercise their fundamental Second Amendment right of self-defense in Illinois, as this Court recognized in Moore v. Madigan. Further, these individuals who all have concealed carry licenses in their home states, and many of them from other states as well, are allowed to come to Illinois and possess firearms to hunt, frequent a firing or shooting range, shoot competitively. They are allowed to possess a firearm in Illinois. What does shoot competitively mean? I'm sorry, Your Honor? What does shoot competitively mean? Trap shooting competitions or sport shooting. Because we have little communities that have that sort of activity here in Chicago, and I wondered whether that was part of it. It very well might. Competitive shooting. Well, it might be, and assuming that it does, the plaintiffs in this case and all the other non-residents with concealed carry licenses in their home states would be allowed to bring firearms into Illinois for that purpose. They're allowed to possess a firearm in Illinois on private property with the owner's permission. They're allowed to transport a concealed, loaded, and accessible firearm in their vehicle as they're driving through the state. Well, they say, I guess the state says, well, that's really not very many, and they can handle that, but if you have all, whatever it is, the other 45 states, it would be way too burdensome for the state police or whoever to scrutinize those people, even at the outset of the application. Well, Your Honor, the state argued that cost was a factor, but I would respond that cost or administrative burden is not a justification for barring someone from exercising fundamental rights, and if it were, then the state could simply deny anyone any fundamental right by simply saying, oh, well, we administratively aren't able to handle that. Did any of your clients at least attempt to fill in the gaps, whatever they think they are, Hawaii and New Mexico and Virginia and what? South Carolina. South Carolina. Those four seem to have a compatible, I guess you'd say, requirement for getting their concealed carry. Is that what they say at least? The short answer is yes. The longer answer is that there's a little bit of irony because even the district court noted that in returning the surveys that the state police sent out, Virginia and South Carolina didn't even respond with the answers the state police was looking for. And about a half a dozen or more also didn't respond, period. Some did not respond, period, although I'm also under the understanding that some of them claimed they didn't get it in the first place. So the survey, you would say, is less than thorough. I would agree with that, Your Honor. But my question really is did any of your people attempt to supplement whatever gap is missing, whatever is missing when they say, well, the state police can't get this, that, and the other thing. If you look at the affidavit, it has a whole series of things that supposedly they check out. Many of them are national. Anybody can check on that. But I'm just wondering, did anybody try to say, look, here's what you say is missing. I can fill it in with an affidavit. Did anybody try to supplement just at the application stage? Well, the short answer is no, because they're not allowed to fill out an application in the first place. If you go to the website and attempt to fill out an application, if your state of residence is not one of the approved states or Illinois, you won't be allowed to submit that application. So it's not a question of are you able to fill in any gaps. You're not even going to be able to have the opportunity to try. What if a state had extremely lax requirements for having a right to carry a concealed weapon? I suppose anyone, including a child, could just ask for it and be granted it. Would Illinois still be required to allow that person to bring a gun into Illinois? Under the Illinois law as it stands, that person can bring a loaded firearm into Illinois. You're not answering my question. My question is, if another state has extraordinarily lax requirements for obtaining a gun, is it your view that Illinois is constitutionally required to allow that person to bring his gun into Illinois? Constitutionally, they are... It's a yes or no question. Yes, they're required to at least allow... The answer is yes or no. The answer is yes, but it's... Well, that's ridiculous. Well, Your Honor, state law allows them to do that already in all the circumstances that I already talked about with hunting and driving through the state and keeping it in their car. No, no. Okay, they allow those things, but they don't allow people to walk around downtown Chicago carrying a gun. Now, your view is they have to do that regardless of whether the person is from a state which has requirements, limitations, similar to Illinois, or is totally lax. No, Your Honor, that's not our viewpoint. Our viewpoint is that that person should be allowed to apply for a license here in Illinois. That's all you're asking, is the right to apply. Absolutely, and that person... Excuse me, Your Honors. That person still has to do a background check, go through all the training requirements here in Illinois, pay all the fees, go through whatever other administrative regulations that Illinois requires. They still have to comply with all of that, and if they don't pass, they don't get a license. There are some states that have no requirements. You can carry a weapon. I don't know the names of the states, but some rural western states, you don't need any license to conceal carry. Isn't that correct? I believe there are a few states like that, and I believe state law on this matter says that if the person has a concealed carry license in their home state, if such is required. Yeah, well, even if it's not required. All I'm pointing out is there are a lot of states that don't even require one. But in order to apply, you do have to have a concealed carry. And I think what Judge Posner is asking, is it real easy to get a concealed carry in some states and not in others? But I think what I want to know is if there are things missing when you come from another state, is there an opportunity to fill in the gap that Illinois might require? That's all. Just to apply. There's no opportunity to do that. If you don't live in one of the four approved states, you will not be allowed to fill out a nonresident application, regardless of how qualified you are, regardless of how much you express to the state that you're willing to do whatever it takes to... But the problem is Illinois complains that for many of these states, it simply can't find out information about the person, which would be material to deciding whether you should be allowed to have the same concealed carry right as in Illinois. Isn't that a serious problem? Well, the person has a tremendous criminal record, but the state doesn't disclose it to Illinois when he applies for an Illinois concealed carry license. What do you do about that situation? Number one, I think someone with a serious criminal record that will show up in a background check in Illinois is going to catch that. And then they don't have to give them one. I'm sorry, Your Honor? And then they do not have to give them a permit. Absolutely. If they don't qualify, they don't get a license. In Illinois checks, if somebody makes an application under the present rules only, some people are not allowed to apply. Most people. Well, if we're talking about non-residents, most people are not allowed to apply. But Illinois... So are you saying they're wrong when they say that there's certain material information they can't collect from a number of states? Is that just a mistake? They emphasize that in their brief. I'm saying it might be true, but it's a red herring issue, Your Honor. Why is it a red herring? Doesn't Illinois have a right to find out whether a person applying for a license is a dangerous person? If the state really had an interest in that, then they would check the licenses of anyone who left the state for a period of time, because who knows what they're doing when they're off in college or when they're taking their consulting job in another state. Who knows what they could check into a mental facility under another name. The state of Illinois would never know. But they don't revoke that person's license when they come back to the state. Someone who lives in one of the 45 states, say, for 50 years, could move to one of the four states, and as soon as they get a concealed carry license in that state, they're immediately eligible to apply in Illinois. Illinois doesn't know what that person did for the first 50 years of their life, but they're eligible. Well, in the affidavit, this is what goes on anyway. This is part of the application process, which I assume is for people in Illinois. It says that a background check is performed, including queries of national systems, such as the National Crime Information Center, the National Instant Criminal Background Check System, the Immigration and Customs Enforcement, ICE, the National Law Enforcement Telecommunication System. All of those apparently cover the whole country, don't they? I believe so. So if they could do that same check for the people in-state, they could do the same for out-of-state, I think you're saying. I am saying. Now, I am curious a little bit about, you know, what isn't there. I know there are some state things that they could check, and maybe that isn't the case, but I think, as you point out, if someone from Hawaii, for example, who would normally – that's one of the states that it was in. I guess if somebody from Hawaii says they'd rather spend January in Illinois than Hawaii, they might deserve a second look. But in the meantime, I think that's probably those national ones, at least a lot of that is covered. I believe that that's correct, Your Honor. And they could look that up for anybody. And not only could they look that up, but what the state hasn't offered, and the state moved for summary judgment in the district court, which was denied its move when this appeal was taken, but they filed it. And the information that they filed in support of that motion is exactly the same as the information they submitted for the preliminary injunction response, which is, of course, the issue on appeal here. There is no mention of any harm anywhere from a concealed carry license holder, much less one from another state or anything like that. And as this court noted twice in Moore that the mere possibility that allowing guns to be carried in public would increase the crime or death rate suffice to justify a ban, Heller would have been decided the other way because the possibility was as great in District of Columbia as it is in Illinois. And the court cited in Moore a scholarly article saying, and the available data about permit holders also imply that they are at fairly low risk of misusing guns consistent with the relatively low arrest rates observed to date for permit holders. Based on available empirical data, therefore, we expect relatively little public safety impact if courts invalidate laws that prohibit gun carrying outside the home, assuming that some sort of permit system for public carry is allowed to stand. We are not trying to strike down a permit system. In fact, my clients, the plaintiffs in this case, are attempting to become part of the permit system. They want to take part in it. They want to apply. They want to go through the training. They want to pay the fees. They want to law-abidingly get themselves as part of the system and get a permit, get a license. Some of the district courts said that the Illinois Firearm Bureau doesn't have direct access to other states' local or state criminal history databases, so it relies on federal databases. But it says that many states don't provide the federal database with complete information. Is that correct? That is what the district court found. Well, are you saying he's wrong? I'm not necessarily saying that the district court was wrong about the databases. What I'm saying and why I actually stated that it is a red herring issue is because the state has no evidence of any harm that has ever come from someone applying for a concealed carry license. But it doesn't allow these people to apply. But from other states, for example. What do you mean from other states? Well, for example, Utah or Florida have, say, more lenient out-of-state concealed carry license applications, and there's no evidence that concealed carry holders who are non-residents are committing mayhem in Utah, Florida, or any other place. The state hasn't submitted any such evidence. I'll submit it's because no such evidence exists. And the idea that someone who wants to come into Illinois and commit a crime with a firearm is first going to apply for a license by going through 16 hours of training, paying hundreds of dollars, and going through background checks before they come in so they can get a license so that they can then come in and commit their crime is an absurd. But what if they just happen to have mental illness? So they're not coming to Illinois to commit a crime, but because they're mentally ill, they are more likely to get into a situation where they commit a crime than a normal person. Well, I'm at my rebuttal time. Do you think Illinois should allow people to obtain a gun license if they have mental illness? They've been hospitalized for mental illness within the previous five years? I think there might be very limited circumstances where the answer to that might be yes. But then don't they need the information from the other state about the person's mental history? I think that that kind of person is the kind of hypothetical speculative harm that the state and Eazell and Moore like to expound upon as the parade of horribles that might happen, which in actuality is not going to happen. What you're saying is the applicant here, no matter where he comes from or what he does, has to go through the stringent searches to find out whether he is a person you don't want to carry a gun. I think that there is sufficient availability to check that person, What the state says is that they don't get detailed information from a number of other states, and they don't get it from the federal database either, so they really can't check up on, say, the mental health history of an out-of-state person petitioning for a license. I think that given the facts of this case and what the plaintiffs are seeking, that the type of harm that the state is claiming they're afraid of is simply not going to happen. Why do you say that? You don't know anything about the mental history of these people who would be applying for these licenses? Because I believe that such a person isn't going to bother to apply for a license. A what person? I'm sorry? Such a person. You don't think people with mental health ever apply for gun licenses? Mental health problems ever apply for gun licenses? I think that someone who... Where do you get that information? Where do you get that idea from? I think that if such... What do you know about it? I think that such a person... Anything? I'm sorry, Your Honor. Do you know anything about this? I know that there's no evidence that anyone who's applied for a concealed carry license has caused any harm in the state. In Chicago, I assume even people with a carry in Illinois can't enter Chicago. I'm sorry, Your Honor? You can't... A concealed carry permit doesn't do you any good in Chicago, right? Well, in many places in Chicago. No. Chicago doesn't allow any weapons. You can't... You don't have the right to carry. There's your next case, friend. We've already had some of those in Highland Park in Chicago. Well, of course, to the extent that's true, that person has other problems besides the inability to fly. Also, someone who is from Hawaii or we'll call it... What's another one? Virginia. What is it? It's good for five years? Is it when a person from one of those states, they get their carry, that's a five-year permit? I believe it's a five-year permit, yes. Okay, so after one year they have it, and then for whatever reason they check into a mental hospital. There's no way to follow up on that, is there? From Illinois? Well, I would submit to the court that to the extent that it is a crime in Illinois to not report it. No, I'm just saying that this is something that would show up in an initial check. It was subsequent to getting that carry that that person checked herself in, for whatever reason. It could be alcoholism. It could be all sorts of reasons. Anyway, we're taking up your time. I will, of course, concede to the court that such a hypothetical could occur, but there's not any evidence that it ever has actually happened or caused any harm. No, because you can't check on it. Or that it's caused any harm. I see my time is up, Your Honor. Yeah, we've taken a lot of your time. Sorry. Thank you, Your Honor. Okay, thank you, Mr. Segal. Mr. Legner? Good morning, Your Honors. May it please the court, counsel? Brett Legner on behalf of the defendants' affilies. Your Honors, this court should affirm the district court's denial of plaintiff's motion for preliminary injunction. First, because the court did not abuse its discretion in finding that the balance of the harms did not favor the grant of interlocutory injunctive relief. And second, because the plaintiffs lack a likelihood of success on the merits. Before turning to my initial point, I want to make one broader umbrella point that goes to a lot of this court's discussion with counsel. And that is, there's no question that there's no challenge that the requirements that Illinois imposes to obtain a concealed carry license, such as no involuntary mental health admissions, no voluntary mental health admissions in the last five years, there's no question that those are valid or those are legitimate qualifications or requirements. And those questions ask of applicants who are Illinois residents before they can get one? Yes. What's the difference between somebody in the state and somebody out of the state? Information. Ability to access information. The availability of information. Availability of information. Absolutely, Your Honor. The information is available someplace, somewhere, is it not? No. No place? No, not always. In Illinois, it is. In Illinois, because this is a requirement in Illinois, we track. And the Illinois, for instance, Illinois Department of Human Services has a database, and there are required reporters. And so for Illinois residents, by law, these admissions are reported. And they can find out whether a man who is making an application, say from Indiana, has a mental background that disturbs you? Your Honor, that is exactly the problem and exactly the point of Illinois. Well, what's the answer to the question? There's no way you can find out? The only way that Illinois can find out. No, no, no. Is there no way you can find out? No, if the state does not track it, if Indiana does not track it, there is no way that Illinois can find out. There's no way you can find out at all? Theoretically, Illinois could call every mental health facility in Indiana. No, no, no, no, no, no, no, no. That's the only way? Is to call every mental health facility? There's no state of Indiana that keeps track of people who have been committed to mental institutions? Many states do not. That is one of the problems. Many states, because many states do not have mental health admissions as a requirement or lack of mental health admissions as a requirement for a concealed carry license, they don't track the admissions. My curiosity is there's no central place in Indiana, for instance, where they keep track of people who have been committed to state mental institutions? That is the point of the survey. That's one of the questions. Do you track these admissions? I understand what the question is. My question, however, is does Indiana have a central depository where they record people who have been mentally committed for mental problems to a state institution? Offhand, I do not know about Indiana specifically, but I know not every state does. Well, the question is not so much whether they have the information, but whether they reveal it. That is another question. For instance, even if states do track it, then the next question is whether they report it to the NICS, the national database. Yes, there are national databases that have information, but not every state participates in those databases, first point. Second point, not every state, even if they do participate, reports all the information that Illinois is seeking. If an Illinois person who has a permit goes to another state and checks into some, I will call it, there's any number of things why someone might check into. It might be depression, it may be something mild, but nevertheless checks into some kind of a mental health person where they don't report. There's no way of detecting that, is there? As a practical matter, there are probably situations where there is no way of detecting it. No, there's not any way because they went somewhere else, and this is part of the problem. And also, go a little bit further here, and maybe you'll get into this, why this is an intermediate as opposed to closer to strict scrutiny. I'll get into that right now. I know you'll probably get into that, so go ahead. Sure, thank you. Starting with Heller, which described the core, well, taking one step back, this is not a severe burden on a core Second Amendment right. That's why we're not closer to strict scrutiny, why we're more in the intermediate scrutiny level. Heller, of course, held that the core Second Amendment right is the right to possess firearms in the home. Now, of course, this court in Moore found that the Second Amendment extends outside the home. It did not hold that it was equally core to the Second Amendment to be able to carry firearms in public, and indeed, other circuits since Moore have consistently determined first that concealed carry is not within, not even at all within the Second Amendment, or circuits such as the Fourth Circuit in Messiandro and the Second Circuit in Kachalski have acknowledged that even if the Second Amendment does apply outside the home, even if it does cover public carry, which this court in Moore stated, even if it does cover it, the further you get from the home, the more attenuated, the further from the core the right is. So even if something is within the Second Amendment, even if public carry is within the Second Amendment, it is not at the core of the Second Amendment. It's further attenuated as you leave the home. But what if there's a state that has the identical requirements for concealed carry as Illinois, and it is perfectly happy to disclose that, that all of the information that it collects in deciding whether to grant these licenses to Illinois? If another state has similar requirements and discloses it to Illinois, that's great. Generally the way to disclose it is by putting it on the national database that Illinois can search. But I mean, if there were, it doesn't matter whether there is or isn't, but if there were a state that had these identical requirements to Illinois and put them on the national database, then would there be any basis for not allowing them to apply for Illinois licenses? If they have identical requirements and they are searchable by Illinois in the national database, then they can apply. You said four states are okay. Then they may apply. You said four states are okay. Under the most recent survey, finalized survey, four states are okay.  They continually resurvey the states, and they're compiling the results. We have the survey results from the states back, and the state police are determining now which states, if more states have responded or have changed the laws because, of course, these laws all over the country are evolving. They're changing very much. And so they're compiling the information to determine if more states have become substantially similar to Illinois, such that the list will grow. That process is ongoing. The surveys have been returned. They're being analyzed right now. Well, you say further from the home, I guess somebody becomes a state right instead of a constitutional right. It's only close to the home that their First Amendment rights are protected. I'm not saying it's only close to the home that their Second Amendment rights are protected. I'm saying that's where the core is, and that is what is relevant when we're determining whether we're, you know, that's one of the things that's relevant when we're determining whether we're closer to strict-level scrutiny or in the more, you know, less harsh means and... Well, what's the basis? Intermediate, I don't know. That's more like a rational basis, isn't it? Intermediate? I'm sorry, Your Honor? Isn't that more like just a rational basis? It makes sense to have a law like that, and therefore it's okay? No, no, no. Under intermediate scrutiny, there still has to be a substantial relationship, some type of substantial relationship. Mm-hmm. So it is more than. But going to the attenuation point that you raised a second ago, and again, as the Fourth and Second Circuits have said, the further outside the home you go, the more attenuated your Second Amendment rights are because they start giving way to countervailing considerations of public safety that are involved when somebody is carrying a gun in public. This is even more attenuated in this case when individuals are seeking to carry a gun in public outside their home state. Mm-hmm. They don't even live here, right? They don't live in the United States, which seems to me to be fairly exclusive. Excuse me, Your Honor? I said they live in the United States, which seems to me to be relatively exclusive. This is true, though there are, for instance... You're not looking for foreign terrorists coming in. You're looking for local terrorists. This is all true, though. The Illinois Concealed Carry Act does have a nonimmigrant visa waiver provision. But, yes, this is true. Of course, this contemplates people that are violently against society that are going to make an application to carry a gun, which strikes me as being silly to begin with. That is to say they're scofflaws, so why would they pay attention to this law? Why not just carry the gun? That's true. I mean, that's unacceptable. Well, how are you protecting us then? At least if you've got an application for scrutiny, you have somebody looking over to see whether they meet whatever standards there are. Absolutely, and that's why when you have an application, you allow the scrutiny, the process works. But the problem is Illinois can't scrutinize the information of out-of-state residents. You can't really tell, no matter how hard you try, whether somebody's going to go off their trolley someplace along the line. That's sadly true. That is sadly true. However, I don't think that that justifies undoing the entire licensure regime. When someone goes to buy a gun, they go through, what do they call that check before you can get a gun and buy a gun at a gun store? So they go through, it's essentially the federal, it's a background check through the federal system, usually through the NICS system. Okay, and that's national, right? It is a national system, though not all states participate in it. Well, in order to get a gun, in most places, you have to go through that scrutiny. In most places, that's correct. Yeah, now some will talk about gun sales, and there's a lot of debate about it, but in any event, that seems to me that that would be, if someone comes in and shows that they can pass that scrutiny, that would at least be a start for an application. And then, of course, they're already going to show you their own concealed carry license from the given state, which is a requirement, which is okay. But that in itself, doesn't that give an identity that this person has already been scrutinized? And there are other ways to do it, other than going to something in Illinois that focuses on mental health. When someone from Illinois goes somewhere else, there's nothing in that focal point. Well, certainly the fit does not have to be perfect. There has to be substantial relation to public safety. We're trying to see how 45 states can somehow assimilate under the Second Amendment, that's all. Sure, and I understand that. For instance, not every other state imposes mental health prohibitors on individuals to carry a weapon in public. Illinois has chosen to do that, and there's no dispute that Illinois can choose to do that. But Illinois has to be able to verify whether that individual, that out-of-state resident, has a mental health prohibitor. The only way to do that, the only meaningful way to do that, is if that state traps it and reports it to a national database. Without that, Illinois cannot verify it. Illinois, without these states reporting that they have a concealed carry license from their home state, or without those states reporting it, Illinois cannot verify the information. Whenever somebody submits an application for a FOID card, an Illinois resident for a FOID card, or an Illinois resident seeks a concealed carry license, the state police still has to verify that information. And in Barron, this court specifically held that Illinois is entitled to verify a record of conviction, a record of mental health issues, at the time of the license application. Illinois is not required constitutionally to take the applicant's word for it. Illinois is entitled, as a constitutional principle, to verify this information. The problem is that Illinois can't verify this information in a lot of instances. How long has this concealed carry law been in effect in Illinois? Concealed carry law, so this was post-implemented after Shepard, so around two years. Yeah, pretty short time, actually. Yes. And yeah, of course, the frustration we all have is in Chicago, where there are guns all over the place, they're shooting all over the place, and there's no such thing as a concealed carry, it's just a concealed shoot, it seems. And what we see when the constant appeals are coming from whatever murders, however many are, a week, it's almost ironic that Illinois has this strict law when Chicago is one of the worst offenders of any gun law. So that's why I don't joke about it. You cannot, this concealed carry is just irrelevant in Chicago. I don't think that that's universally true here. You don't, can somebody go into Chicago and have in their pocket from Illinois a concealed carry? Yes. And can go shopping and do other things and have no problem. Yes, absolutely, that's why Illinois, we go into a number of establishments in Illinois and you will see on the door the sticker with the red circle with the line and the gun that says you may not carry in here. The concealed carry act preempts a lot of municipal laws. So it's a private thing, a grocery store and other places say I don't care if you've got a concealed carry, you don't come in here, or something like that? If the place is not a prohibited place such as a bar or a grocery store, something that, yeah, it's up to the owner to put that sign on the door. My frustration with this, this is the application. This isn't the final decision and that's the frustrating thing, I think, with a lot of people. It's just a matter of applying and then trying to come up with an accommodation that, you know, where you can show applicants can take on the burden of saying look, I can prove all these things about me, but I do want to be a concealed carry in Illinois and I can show you that there's no reason to worry about me for whatever reason. I don't know if they can come up with something from the state or maybe just promise I've never checked into a mental health hospital. And sometimes checking into a mental health hospital is not really onerous. Sometimes those are curative things and it just happens to be at that institution where you get over alcoholism or something. And I wonder if this is such a valid test or is it really, as they say, a red herring. Well, again, Your Honor, there's the application, but there's the need to be able to verify the information and that's the problem. If Illinois cannot verify the information, there's no point to the application. But a lot of these in the affidavit, that's national verification. You can say, well, maybe they're not as good as you say, but I read them out here, whatever it is, it's the National Institute Instant Criminal Background Check, for example. I assume that's something everybody can check. Yes, Illinois can check it, but two points on that specific database, Your Honor. One is, not every state participates in it. All right. So national is a misnomer then? No. It's, you know, it's... Well, Sarah, no, from the standpoint of... Not every state. Every state could participate in it. It's operated by the FBI, so it's within the federal government, so it's a national system operated by the federal government. Not every state participates in it, and not every state, even if they do participate, for instance, submits mental health admission information to it, for instance, because those states don't even track it because they're not concerned with it as part of their concealed carry regime. Okay, I only mention it because it's in the affidavit. Oh, no, the affidavit provides the undisputed evidence of the problems that Illinois has with being able to verify this information and why Illinois relies on these databases and requires states to submit information to the databases. That's how Illinois can verify it. That's the evidence in this case. The actual evidence in this case is that it's the only meaningful way that Illinois can verify this out-of-state information. That's why it surveys these states to see if they submit this information that they can then check. And Illinois, again, continually updates these surveys. They resurvey, they have more in-depth questioning in the most recent surveys, and it's a complicated process to determine whether a state's law is substantially similar. Certainly substantial similarity is defined in the administrative code as requiring certain things, but even to determine that, there's 50 different states in the District of Columbia all with very different regimes and different requirements, and so it's an arduous process, but a process that Illinois continues to undertake. Well, a question I don't know the answer to, obviously. Is there a record of how many Illinois people are rejected when they apply? There is a record of that, Your Honor. That information's not in this record, but those statistics are available. For instance, I know that there have been Illinois residents that received a little over 200,000. 200,000 Illinois residents with a concealed carry license have been issued. I don't off the top of my head know the rejection number, but that information is known, absolutely. It's tracked by the state police. Okay. Okay, thank you, Mr. Legler. Thank you, Your Honor. Mr. Segal? Thank you, Your Honor. I appreciate the consideration. A few very brief points. Your Honor did say in Moore v. Madigan that the right to carry was just as important outside the home as inside the home, the 34th floor penthouse versus walking the streets of Chicago. The state uses that as a false comparison, a false analogy of Heller to try and argue that the standard of scrutiny, the level of scrutiny should be lesser because somehow this right is less important. They continue to argue that. Yeah, but their principal argument is simply that they cannot get as much information about out-of-state people  as they can from people who live in Illinois. And, you know, so they're worried that they can't screen these out-of-state people fully. Now, it depends on the state, but for many states, they simply can't get the information that they need. They might claim worry, Your Honor, but the evidence does not. Pardon? They might claim worry, Your Honor, but the evidence does not bear out. What do you mean by evidence? The complete lack of evidence that someone applying for a concealed carry permit from out-of-state in any state actually has caused any harm to anybody. I note, Your Honor's note of irony with what's going on in Chicago. My clients are not the crime problem in Illinois. I see my time is up. Thank you very much. Let me just ask you. Of course. There were some things in your brief that puzzled me. You said under this court's two-part preliminary injunction test, plaintiffs must... And then you listed three things they had to do. So how is it a two-part test when there are three requirements? Your Honor, this... I'm afraid I don't know the page that you're referring to. Page 22. But the likelihood of success on the merits, the courts have said, likelihood of success on the merits in a case like this is the main element to be looked at. I'm puzzled why you said it was a two-part test and then you gave three parts. If I made a typo then in that score, I do apologize. But certainly there is likelihood of success on the merits, which the district court found we proved, we showed irreparable harm, lack of legal remedy, which the district court also found that we proved. And the courts have found in these kind of analyses that the likelihood of success on the merits is supposed to be the main factor, and the district court found that we showed that. In the lack of any actual evidence that there is some harm that would be balanced on the other side of the plaintiff's denial of constitutional rights, which is always supposed to be an irreparable harm and always supposed to be in the public interest, I would ask that the court reverse the district court and enter the preliminary injunction we're asking. Okay, well, thank you, Mr. Seagal and Mr. Leifner. Thank you, Your Honors. And we will move on to our next case.